UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BAINBRIDGE, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO.: 5:16-cv-00555 |
| | ) | JUDGE BENITA Y. PEARSON |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **JOINT MOTION FOR PRELIMINARY APPROVAL OF** |
| MEDLINE INDUSTRIES, INC. | ) ) | **CLASS ACTION SETTLEMENT AGREEMENT** |
| Defendant. | ) | |

## I. INTRODUCTION

Plaintiff Michael Bainbridge ("Representative Plaintiff, "Class Representative," or "Plaintiff"), on behalf of himself and the members of proposed settlement Class ("Class Members"), and the Medline Industries, Inc. ("Defendant"), respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiff and Defendant pursuant to Fed. R. Civ. P. 23(e).

In support of this motion, Representative Plaintiff and Defendant submit the Settlement Agreement and its exhibits (*see* Exhibit 1), which consist of the following documents and proposed orders:

    Exhibit A:    List of Plaintiffs-Class Members

    Exhibit B:    Settlement and Release Agreement between Defendant and Representative Plaintiff

    Exhibit C:    Preliminary Order Approving Settlement and Notice

    Exhibit D:    Class Notice

    Exhibit E:    Final Order and Judgment Entry

1

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit C.  Following the Fairness Hearing, Representative Plaintiff and Defendant will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry attached to the Settlement Agreement as Exhibit E.

The following schedule sets forth a proposed sequence for the Settlement:

- Five (5) days after Preliminary Approval: Defendant will provide Class Counsel a spreadsheet containing the names, last known addresses, and Social Security Numbers of the Class Members;

- Fourteen (14) days after Preliminary Approval: Class Counsel will mail Notice to the Class Members;

- Thirty (30) days after mailing of Class Notice: Last day for Class Members to "opt-out" of the Settlement and submit written objections to the Settlement;

- Forty-Five (45) days after mailing of Class Notice: Last day for filing and serving of papers in support of final Settlement approval;

- Forty-Five (45) days after mailing of Class Notice: Class Counsel will file a Declaration verifying that the Class Notice was distributed, and the Parties will submit the proposed Estimated Schedule of Individual Payments and an updated version of the proposed Final Order and Judgment Entry;

- Sixty (60) days after mailing of Class Notice **[DATE TO BE SET BY COURT]**: Final Settlement approval hearing at **[TIME TO BE SET BY COURT];**

- Thirty-One (31) days after the Court's Final Order and Judgment Entry: the Effective Date; and

- Three (3) days after the Effective Date: Defendant will mail the settlement funds to Representative Plaintiff and the Class Members, the Service Award to Representative Plaintiff, and the attorneys' fees and reimbursement of litigation expenses to Class Counsel.

As explained below, the Settlement Agreement was reached during arms-length negotiations between the Parties, which were conducted by experienced counsel following investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action

On March 7, 2016, Representative Plaintiff Michael Bainbridge filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.03. On May 12, 2016, Representative Plaintiff filed his First Amended Complaint alleging the same causes of action, but narrowing the scope of the alleged violations.

The action contests Defendant's practice and policy of failing to including wellness program cash payments into the calculation of overtime pay to Representative Plaintiff and its hourly employees.

On May 26, 2016, Defendant filed an answer to the Amended Complaint disputing the material allegations both as to fact and law and denying liability to Plaintiff or any Class Members as defined in the Settlement Agreement, and asserting several affirmative defenses.

### B. Negotiation of The Settlement

Between May and August 2016, the Parties engaged in informal yet comprehensive discovery regarding Plaintiffs' claims and Defendant's defenses to such claims. This included a complete analysis of each Class Member's alleged overtime damages.

3

Between July and August 2016, the Parties engaged in settlement negotiations, and ultimately reached an agreement on August 19, 2016 to settle the Action on the terms set forth in the attached Settlement Agreement.

### C. The Settlement Terms

The terms of the Settlement Agreement include: the total Settlement Payment to be made by Defendant, the Effective Date of the Settlement, the calculation of Individual Payments to eligible recipients, the process for distributing Individual Payments to recipients, the proposed Service Award to Representative Plaintiff in recognition of his service in this Action and the providing of a general release, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Class Counsel.

The persons eligible for Individual Payments consist of Representative Plaintiff and members of the proposed settlement class. The definition of the settlement class encompasses 3,566 current and former hourly employees of Defendant who received a wellness program cash payment and who worked more than forty hours in one or more workweeks, during which they received such payment between March 10, 2014 and March 6, 2016.

The Class Members will release all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action (1) asserted in Plaintiff's Amended Complaint and (2) any other claims regarding the alleged failure to include all remuneration paid to employees in their regular rate of pay for purposes of calculating their overtime compensation, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act through the Release Period. The "Released Period" for Plaintiff and the Class shall mean the period between March 10, 2014 and the date the District Court enters final approval.

The Individual Payments for which Class Members are eligible will be calculated proportionally on each Class Member's overtime damages resulting from Defendant's failure to include in the calculation of their regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the wellness program cash payment, during the Calculation Period.  The Calculation Period for Representative Plaintiff and the Class shall mean the period between March 10, 2014 and March 6, 2016.

### III.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed class settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e).  As shown below, the Court's preliminary approval is warranted.

#### A.   Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted

##### 1.   Certification of the Settlement Class Is Appropriate

A proposed settlement class must satisfy the requirements of Rule 23.  *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)).  The proposed Class satisfies those requirements.

The proposed class meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Class, consisting of 3,566 members, is "so numerous that joinder of all members is impracticable."  Common issues of law or fact are presented by the Class's claims under the OMFWSA, including:

> a) Whether Defendant miscalculated the overtime compensation it paid to Plaintiff and other class members by excluding the wellness program cash payment from the calculation of their "regular rates" for purposes of overtime compensation; and
>
> b) Whether Plaintiff and other class members would have received additional overtime compensation if the wellness program cash

5

>payment had properly been included in their "regular rates" of pay, and, if so, in what amount.

Representative Plaintiff is an adequate representative of the Class, in that he has common interests with other class members and he has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented under the OMFWSA predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating 3,566 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2. The Class Notices Satisfy Rule 23 and Due Process

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle*

6

*& Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed Class Notice satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to the members of the class by first-class mail using the addresses shown in Defendant's records.

    **B.**    <u>**Approval of the Settlement Under Rule 23(e) Is Warranted**</u>

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

As shown below and in the Lazzaro Declaration (*see* Exhibit 2), the seven-factor standard supports approval of the Settlement.

#### a) *No Indicia of Fraud or Collusion Exists*

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked. A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties. As such, there is no indicia of fraud or collusion.

8

### b) *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval*

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims.  The Parties disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied.  Defendant claims that even if Plaintiffs succeed on the merits, Plaintiffs cannot not prove a willful violation of the law, and thus, no wages would be owed for the 3rd year of the three-year limitations period.

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling.  The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

### c) *Investigation Was Sufficient to Allow the Parties to Act Intelligently*

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement.  Relevant information was exchanged including a complete analysis of each Class Member's alleged overtime damages resulting from Plaintiff's allegations that Defendant failed to pay overtime compensation to Representative Plaintiff and its hourly employees at one and one-half times their "regular rate," and to include in the calculation of their regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the wellness program cash payment.  In addition, Class Counsel obtained investigation notes from Representative Plaintiff and numerous other employees who are members of the proposed settlement class, and the legal issues in the case were thoroughly researched by counsel for the Parties.  All of aspects of the dispute are well-understood by both sides.

9

### d) The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

### e) Uncertainty of Recovery Supports Approval

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### f) Experienced Counsel's Views Favor Approval

The Parties' counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole, as described in the Lazzaro Declaration (*see* Exhibit 2).

## 2. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). In the present case, the Settlement Agreement provides that Defendant's Settlement Payment, after deduction of the Service Award to Representative Plaintiff, attorneys' fees, and litigation reimbursements to Class Counsel, will be divided into Individual Payments for which participants in the settlement will be eligible. All

10

components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Class Members.

### a) *The Individual Payments Are Reasonable and Adequate*

All Individual Payments will be calculated proportionally on each Class Member's overtime damages resulting from Defendant's alleged failure to include in the calculation of their regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the wellness program cash payment, during the Calculation Period. The Calculation Period for Representative Plaintiff and the Class shall mean the period between March 2014 and March 2016.

If approved by the Court, the Proposed Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation. During the two-year limitations period provided under Ohio law (March 10, 2014 to March 6, 2016), Representative Plaintiff and the Class Members were allegedly denied $66,581.24 in overtime compensation.

After deductions, Representative Plaintiff and the Class Members will receive approximately $99,547.50. As such, the Proposed Settlement recovers approximately 150% of the overtime compensation Representative Plaintiff and the Class Members were allegedly denied over the two-year limitations period.

Prior to the Fairness Hearing, the Individual Payments to Representative Plaintiff and the Class Members will be calculated, and a Proposed Schedule of Individual Payments will be submitted to the Court for approval.

### b) Representative Plaintiff's Service Award Is Proper and Reasonable

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Lazzaro Declaration (*see* Exhibit 2) establishes that the proposed Service Award is proper and reasonable. Representative Plaintiff Michael Bainbridge's services

12

were extensive and effective. In addition to discovering Defendant's alleged failure to include in the calculation of his and Class Member's regular rates "all remunerations for employment paid to, or on behalf of, the employee," such as the wellness program cash payment reporting it to Class Counsel, he provided extensive factual information to Class Counsel and faithfully engaged in calls and other communications with Class Counsel. Moreover, he subjected himself to the responsibilities of serving as a named plaintiff in a lawsuit against his former employer.

      *c)*  *The Attorneys Fees and Expenses to Class*
          *Counsel Are Proper and Reasonable*

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The OMFWSA, which is interpreted in accordance with the FLSA,[1] also provides that the defendant is liable for "costs and reasonable attorney's fees." O.R.C. § 4111.10.

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley*'s emphasis on

---

[1] *See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, at fn 2 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006).

"encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel.  The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."  *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved").  *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm.  The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").  <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for

14

class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The Individual Payments represent approximately 150% of the overtime compensation Representative Plaintiff and the Class Members were allegedly denied over the two-year limitations period, after deduction of the Service Award to Representative Plaintiff, attorneys' fees, and litigation reimbursements to Class Counsel. The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Class.

The attorneys' fees requested by Class Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing his potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Class Members were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants notice to the class of Plaintiffs' attorneys' fee request. Prior to the Fairness Hearing, Class Counsel will submit supplemental information regarding the reasonableness of the fee request.

A statement of expenses will also be submitted by Class Counsel prior to the Fairness Hearing. Expenses are currently estimated to be approximately $7,952.50. All such expenses were and/or will be incurred in the course of this action for the purpose of preserving, proving,

and presenting the claims of Representative Plaintiff and the Class Members, and mailing notice to the 3,566 Class Members and attending the Fairness Hearing.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV. CONCLUSION

Representative Plaintiff and Defendant request that the Court grant preliminary approval of the Settlement, designate Representative Plaintiff as Class Representative, preliminarily approve Class Representative's request for a Service Award, designate Plaintiffs' Counsel as Class Counsel, preliminarily approve Class Counsel's request for attorneys' fees and costs, and direct distribution of notice to the Class by entering the proposed Preliminary Order attached to the Settlement Agreement as Exhibit C.

Respectfully submitted,

| | |
|---|---|
| /s/ Chastity L. Christy | /s/ Edmond J. Mack |
| Chastity L. Christy (0076977) | Edmond J. Mack (0082906) |
| Anthony J. Lazzaro (0077962) | Lee E. Plakas (0008628) |
| Lori M. Griffin (0085241) | Gary A. Corroto (055270) |
| The Lazzaro Law Firm, LLC | Tzangas, Plakas, Mannos, Ltd. |
| 920 Rockefeller Building | 220 Market Avenue South, Eighth Floor |
| 614 W. Superior Avenue | Canton, Ohio 44702 |
| Cleveland, Ohio 44113 | Telephone: 330-455-6112 |
| Phone: 216-696-5000 | Facsimile: 330-455-2108 |
| Facsimile: 216-696-7005 | emack@lawlion.com |
| chastity@lazzarolawfirm.com | gcorroto@lawlion.com |
| anthony@lazzarolawfirm.com | |
| lori@lazzarolawfirm.com | Counsel for Defendant |

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
NILGES DRAHER LLC
4580 Stephen Circle, N.W.
Suite 201

Canton, Ohio 44718
Telephone: 330-470-4428
Facsimile: 330-754-1430
hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

Class Counsel

## CERTIFICATE OF SERVICE

      I hereby certify that on September 23, 2016, a copy of the foregoing *Joint Motion For Preliminary Approval Of Class Action Settlement Agreement* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                                   /s/ Chastity L. Christy
                                   Attorney for Plaintiff